UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WAYNE E. JACKSON,

    Petitioner,

    v.

DERRAL G. ADAMS, warden,

    Respondent.

No. C 09-3202 MHP (PR)

**ORDER DENYING HABEAS PETITION**

## INTRODUCTION

Wayne E. Jackson filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the habeas petition in which he challenges several jury instructions given at the trial at which he was convicted of attempted murder and being a felon in possession of a firearm. For the reasons discussed below, the petition will be denied.

## BACKGROUND

The California Court of Appeal summarized the evidence:

> On June 15, 2005, Homer Conway had a carpet cleaning job at a location in Oakland. As he set up his equipment, he heard gunshots, went to the porch, and determined that the shots originated from an apartment complex across the street. Conway saw someone chasing another person and heard two more shots. He saw the victim clutch at his torso with blood on his shirt; the victim had his back to the shooter at the time he was shot.
>
> Lasherell Wiggins testified that she was with the victim, Troy Hobbs, when defendant shot him. They were both addicts and would frequent the apartment building to get high. The day of the shooting, defendant approached Hobbs, pointed a revolver at him, and stated "I'm tired of your mother fucking shit, bull shit." As she fled, she heard five or six gunshots. Wiggins identified defendant to police after he was apprehended.
>
> When the police arrived, a man told them that the shooter ran into Apartment 2. The

> police arrested defendant after ordering him and the occupants of Apartment 2 to come outside. Defendant said, "I did that shit. He beat my ass so I shot him."
>
> While placed in a patrol car, defendant said, "dude slapped my sister, that's why I shot his ass." Defendant also stated that the victim beat him. After a technician performed a gunshot residue test on defendant, he said, "Man, you don't need that shit. I fucking shot that nigga'. The mother fucker robbed me."
>
> During a police interview, defendant stated that Hobbs had robbed him the day before the shooting and twice on the day of the shooting. Hobbs also robbed defendant's brother-in-law the day of the shooting. Defendant went to his mother's house, retrieved his mother's .38 revolver, and shot Hobbs when he returned to the apartment building.
>
> Defendant's niece testified that Hobbs robbed another of her uncles the day of the shooting or the day before. She saw defendant shoot Hobbs. At the time of the shooting, Hobbs was "coming at" defendant.

Resp. Ex. 2, California Court of Appeal Opinion ("Cal. Ct. App. Opinion"), at 2-3. At trial, the defense argued theories of self-defense, imperfect self-defense, and heat-of-passion attempted voluntary manslaughter.

Following the jury trial in Alameda County Superior Court, Jackson was found guilty of attempted murder and possession of a firearm by a felon. Sentence enhancement allegations of personal and intentional discharge of a firearm, personal infliction of great bodily injury, and a prior conviction were found true. On July 14, 2006, Jackson was sentenced to a total of 47 years to life in prison. Jackson appealed. The Court of Appeal affirmed the judgment of conviction with a sentence modification of striking the three year great bodily injury enhancement under Cal. Penal Code § 12022.7(a). The California Supreme Court denied Jackson's petition for review.

Jackson then filed this action. In his federal habeas petition, Jackson alleged: (1) the use of the CALCRIM 220 jury instruction on reasonable doubt violated his Sixth and Fourteenth Amendment rights to be convicted on no less than proof beyond a reasonable doubt; (2) the use of the CALCRIM 371 jury instruction on consciousness of guilt violated his constitutional rights to due process and a fair trial; and (3) the use of the CALCRIM 372 jury instruction on flight violated his constitutional rights to due process and a fair trial. The court found the claims cognizable and ordered respondent to show cause why the petition should not be granted. Respondent filed an answer. Jackson did not file a traverse, and the

2

deadline by which to do so has long passed. The action is ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district. 18 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C § 2254(b), (c). The parties do not dispute that the state judicial remedies were exhausted for the claims in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the

1  writ if the state court identifies the correct governing legal principle from [the] Court's
2  decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at
3  413. "[A] federal habeas court may not issue the writ simply because that court concludes in
4  its independent judgment that the relevant state-court decision applied clearly established
5  federal law erroneously or incorrectly. Rather, that application must also be unreasonable."
6  Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask
7  whether the state court's application of clearly established federal law was "objectively
8  unreasonable." Id. at 409.

**DISCUSSION**

10 All three of Jackson's claims pertain to the jury instructions given at his trial. To
11 obtain federal collateral relief for errors in the jury charge, a petitioner must show that the
12 ailing instruction "by itself so infected the entire trial that the resulting conviction violates
13 due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991). The instruction may not be
14 judged in artificial isolation, but must be considered in the context of the instructions as a
15 whole and the trial record. Id.  In other words, the court must evaluate jury instructions in
16 the context of the overall charge to the jury as a component of the entire trial process. United
17 States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154
18 (1977)). "[T]he proper inquiry is not whether the instruction 'could have' been applied in an
19 unconstitutional manner, but whether there is a reasonable likelihood that the jury did so
20 apply it." Victor v. Nebraska, 511 U.S. 1, 6 (1994) (citing Estelle v. McGuire, 502 U.S. at
21 72). Even if the instruction is erroneous, habeas relief would be available only if the error
22 had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht
23 v. Abrahamson, 507 U.S. 619, 637 (1993).

24 A.   The Reasonable Doubt Instruction - CALCRIM 220

25 Jackson challenges the pattern reasonable doubt instruction that was given to the jury
26 at his trial:

> The fact that a criminal charge has been filed against the defendant is not evidence
> that the charge is true. You must not be biased against the defendant just because he
> has been arrested, charged with a crime, or brought to trial. [¶] A defendant in a

4

> criminal case is presumed to be innocent. This presumption requires that the People prove each element of a crime and special allegation beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially *compare and consider all the evidence that was received throughout the entire trial*. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

Cal. Ct. App. Opinion at 3-4 (quoting CALCRIM 220 (italics added)).

The California Court of Appeal rejected Jackson's claim that the italicized language impermissibly shifted the burden of proof to the defense by allowing the jury to hold against defendant his failure to present sufficient evidence to prove his innocence. The court noted that Jackson's argument had been "rejected in several recent published decisions." Cal. Ct. App. Opinion, p. 3 (citing People v. Flores, 153 Cal.App.4th 1088 (Cal. Ct. App. 2007); People v. Westbrooks, 151 Cal.App.4th 1500 (Cal. Ct. App. 2007); People v. Hernandez-Rios, 151 Cal.App.4th 1154 (Cal. Ct. App. 2007)). The state appellate court explained:

> The challenged language in CALCRIM 220 is similar to language in CALJIC 2.90 providing, "Reasonable doubt . . . is that state of the case which, after *the entire comparison and consideration of all the evidence*, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge." (Italics added.) The United States Supreme Court rejected a due process challenge to the adequacy of CALJIC 2.90 in part because "the entire comparison and consideration of all the evidence" language "explicitly told the jurors that their conclusion had to be based on the evidence in the case." (Victor v. Nebraska (1994) 511 U.S. 1, 16.) The language in CALCRIM 220 is not different in that respect. (People v. Hernandez-Rios, supra, 151 Cal.App.4th at p. 1157.) In addition, the trial court instructed the jury with CALCRIM 355, to the effect that a defendant "may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt." (See People v. Flores, supra, 153 Cal.App.4th at p. 1093.) [¶] There is no reasonable likelihood the jury applied CALCRIM 220 to shift the burden to defendant to prove the existence of reasonable doubt.

Cal. Ct. App. Opinion at 4 (emphasis in source).

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The constitutional question posed by a challenge to a reasonable doubt jury instruction "is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to

5

1  meet the Winship standard." Victor, 511 U.S. at 6.  Here, the state appellate court's rejection
2  of Jackson's claim was not contrary to or an unreasonable application of clearly established
3  federal law as set forth by the U.S. Supreme Court.  The instruction must be read in context
4  of the other instructions and, when so read, the instruction did not shift the burden of proof
5  away from the prosecution or lower the amount of such proof to anything less than proof
6  beyond a reasonable doubt.  The preliminary instructions to the jury at the beginning of the
7  case informed the jury that "[a]fter the People present their evidence, the defense may also
8  present evidence but is not required to do so.  Because he is presumed innocent, the
9  defendant does not have to prove that he is not guilty." RT 123.  The jury was never told that
10 defendant had any burden to present anything and all the instructions given pointed in the
11 opposite direction.  The jury was instructed: "decide what happened based only on the
12 evidence that has presented to you in this trial," id. at 593; "the fact that a criminal charge has
13 been filed against the defendant is not evidence that the charge is true," id. at 595; the
14 defendant "is presumed to be innocent," id., "[t]his presumption requires that the People
15 prove each element of a crime and special allegation beyond a reasonable doubt," id.; see
16 also id. at 603, 606-07, 608, 610, 612, 614, 616 (reiterating requirement that People prove
17 guilt beyond a reasonable doubt); "use only the evidence that was presented in this
18 courtroom," id.; the jury could rely on circumstantial evidence to conclude that a fact
19 necessary to find guilt had been proven only if it was "convinced that the People have proved
20 each fact essential to that conclusion beyond a reasonable doubt," id. 597; to rely on
21 circumstantial evidence, the jury "must be convinced that the only reasonable conclusion
22 supported by the circumstantial evidence is that the defendant is guilty," id. at 597; see
23 also id. at 598; and that the "People must prove not only that the defendant did the acts
24 charged but also that he acted with a particular intent or mental state," id.  The court also
25 instructed the jury that a "defendant has an absolute constitutional right not to testify.  He
26 may rely on the state of the evidence and argue that the People have failed to prove the
27 charges beyond a reasonable doubt," id. at 603.  In light of these other instructions, there is
28 no reasonable probability that the jury seized upon the phrase "impartially compare and

1 consider all the evidence that was received throughout the entire trial," and ignored all the
2 other surrounding instructions to come to a belief that defendant had any burden to prove his
3 innocence.  Having been instructed that the defendant had no burden to present evidence or
4 to testify and having been instructed to consider only the evidence presented at trial, there is
5 no reasonable likelihood that the jurors understood the directive to "compare and consider"
6 evidence to mean that the defendant had an affirmative duty to create a reasonable doubt.
7 The state appellate court's conclusion that the instructions did not shift or reduce the burden
8 of proof was not contrary to or an unreasonable application of Winship or Victor.  Jackson is
9 not entitled to habeas relief on his due process claim.

B. The Instruction On Creation Of False Evidence - CALCRIM 371

Jackson next challenges the pattern jury instruction on creation of false evidence that was given to the jury at his trial.  The jury was instructed: "If the defendant tried to create false evidence or obtain false testimony, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself." Cal. Ct. App. Opinion at 5 (quoting CALCRIM 371).

The California Court of Appeal rejected Jackson's argument that the instruction should not have been given because there was no evidence he tried to create false evidence or obtain false testimony.

> For the purpose of analysis, we will assume there was no evidentiary basis for the instruction. "It is error for a court to give an 'abstract' instruction, i.e., 'one which is correct in law but irrelevant[,]' " but " '[i]n most cases the giving of an abstract instruction is only a technical error which does not constitute ground for reversal.'" (People v. Rowland (1992) 4 Cal.4th 238, 282; see also People v. Rollo (1977) 20 Cal.3d 109, 122-123, disapproved on another ground in People v. Castro (1985) 38 Cal.3d 301, 308 [the giving of a correct but irrelevant instruction "is usually harmless, having little or no effect 'other than to add to the bulk of the charge.' [Citation.] There is ground for concern only when an abstract or irrelevant instruction creates a substantial risk of misleading the jury to the defendant's prejudice"].) Defendant claims reversal is required since the instruction misled jurors, inviting them to speculate that defendant colluded with others to present false testimony.
>
> There is no reasonable likelihood the jury was misled by the inclusion of CALCRIM 371.  (People v. Rowland, supra, 4 Cal.4th at p. 282; People v. Cain (1995) 10 Cal.4th 1, 36.) The jury was told, "Some of these instructions may not apply . . . depending on your findings about the facts of the case. Do not assume just because I give a

7

1    particular instruction that I am suggesting anything about the facts. After you have
     decided what the facts are, follow the instructions that do apply to the facts as you find
2    them." (See <u>People v. Olguin</u> (1994) 31 Cal.App.4th 1355, 1381, disapproved on
     another ground in <u>People v. Cromer</u> (2001) 24 Cal.4th 889, 901, fn. 3.) CALCRIM
3    371 on its face only applies where a defendant "tried to create false evidence or obtain
     false testimony." If, as defendant contends, there was no evidence that he did so, then
4    there is no reason to believe the jury relied on the instruction in finding defendant
     guilty. Past decisions have treated the erroneous giving of CALJIC 2.04, the
5    equivalent CALJIC instruction, as harmless error. (<u>People v. Jackson</u> (1996) 13
     Cal.4th 1164, 1225; <u>People v. Pride</u> (1992) 3 Cal.4th 195, 248-249; see also <u>People v.
6    Crew</u> (2003) 31 Cal.4th 822, 849.)

7    There is no reasonable probability that defendant was prejudiced by the inclusion of
     CALCRIM 371 in the jury instructions. (<u>People v. Prettyman</u> (1996) 14 Cal.4th 248,
8    280.)

9  Cal. Ct. App. Opinion at 5-6.

10         The state appellate court thus concluded both that there was no due process violation

11 and that any hypothesized error would have been harmless. Jackson has not shown that the

12 state appellate court's rejection of his due process claim was contrary to or an unreasonable

13 application of clearly established federal law as set forth by the Supreme Court. He has not

14 shown that the instruction incorrectly stated the law. Giving a correct statement of state law

15 does not make a trial fundamentally unfair. Even if, as he argues, no evidence showed the

16 scenario contemplated by the instruction to have existed, the instruction would have been

17 mere surplusage. The jury instructions given included standard instructions that not all

18 instructions may apply, that the jurors were not to assume that the giving of an instruction

19 suggested anything about the facts, and that the jurors were to "follow the instructions that do

20 apply to the facts as you rind them." RT594. The jury is presumed to have followed the

21 instructions and this is not a case where that presumption should be ignored. See <u>Francis v.

22 Franklin</u>, 471 U.S. 307, 324-25 n.9 (1985). Jackson is not entitled to relief on his claim that

23 the false evidence instruction violated his right to due process.

24   C.    <u>The Instruction On Flight - CALCRIM 372</u>

25         Jackson next challenges the pattern jury instruction on flight that was given to the jury

26 at his trial. The jury was instructed: "If the defendant fled immediately after the crime was

27 committed, that conduct may show that he was aware of his guilt. If you conclude that the

28 defendant fled, it is up to you to decide the meaning and importance of that conduct.

8

However, evidence that the defendant fled cannot prove guilt by itself." Cal. Ct. App. Opinion at 6 (quoting CALCRIM 372).

> The California Court of Appeal rejected his several challenges to the flight instruction.
>
> First, defendant contends there was no evidentiary basis for the instruction. Assuming that is so for the purpose of analysis, the instruction was merely superfluous and there is no reasonable probability that it prejudiced defendant. Our previous analysis as to CALCRIM 371 is largely applicable here. . . . Past decisions have treated the erroneous giving of CALJIC 2.52, the equivalent CALJIC instruction, as harmless error. (People v. Carter (2005) 36 Cal.4th 1114, 1182-1183; People v. Visciotti (1992) 2 Cal.4th 1, 61.)
>
> Second, defendant maintains that the instruction was improperly argumentative because there was no comparable instruction that a favorable inference could be made from the absence of flight. The California Supreme Court rejected this argument as to CALJIC No. 2.52, reasoning, "[t]he instruction is not argumentative; it does not impermissibly direct the jury to make only one inference." (People v. Mendoza (2000) 24 Cal.4th 130, 180-181; see also People v. Jackson, supra, 13 Cal.4th at p. 1224.) Neither does CALCRIM 372 direct the jury to make only one inference. Instead, the instruction states, "If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct." (CALCRIM 372.) The lack of a separate instruction on the absence of flight does not render the flight instruction argumentative. (See People v. Staten (2000) 24 Cal.4th 434, 459; People v. Williams (1997) 55 Cal.App.4th 648, 652-653.)
>
> Third, according to defendant, "[t]he language in CALCRIM 372 stating that flight 'immediately after the crime was committed' may show that the defendant 'was aware of his guilt' presumes the existence of a crime and of the defendant's guilt." We reject any suggestion the jury would have understood the instruction as a judicial declaration that a crime occurred. There is no reasonable likelihood that the jury so understood the instruction since the trial, arguments, and other instructions clearly put the issue of defendant's guilt before the jury. (See People v. Cannady (1972) 8 Cal.3d 379, 392.)
>
> Finally, defendant contends CALCRIM 372 unconstitutionally lowered the prosecution's burden of proof because evidence of flight is of little probative value in proving guilt. The instruction does not place undue significance on the fact of flight. Instead, it directs the jury "to decide the meaning and importance of that conduct." (CALCRIM 372.) Instructing the jury that it may infer a defendant's awareness of guilt from flight does not violate due process. (People v. Hernandez-Rios, supra, 151 Cal.App.4th at pp. 1158-1159.) Defendant's argument is without merit. (Id. at p. 1159; see also People v. Jackson, supra, 13 Cal.4th at p. 1226 [discussing CALJIC 2.52].)

Cal. Ct. App. Opinion at 6-7.

The instruction did not posit the existence of flight, but instead left both the existence and significance of the circumstance to the jury. The wording of the instruction combined with other instructions directed the jury to ignore instructions found inapplicable to the facts. Further, the jury was instructed that, even if flight occurred, that evidence was not alone enough to prove guilt. The instruction did not shift or reduce the burden of proof. No due

9

process violation occurred here.  The California Court of Appeal's rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law.

Lastly, instructional errors are subject to the Brecht rule, i.e, even if any of the instructions had amounted to a due process violation, habeas relief would be warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.  Jackson would not be able to satisfy this test in light of the evidence at the trial – especially his many admissions to the police shortly after the shooting.  Jackson admitted that he shot the victim, that he shot the victim because the victim had committed crimes against him and family members in the past, and that he went to his mother's house to retrieve a gun before returning to shoot the victim.  Not only had he made those many admissions, there was evidence that he approached the victim and shot the victim from behind as the victim tried to flee from him.  Jackson's statements to the police indicated that he shot the victim because he had had tired of the victim's criminality, rather than because of any immediate danger posed by the victim.  With this state of the evidence, any instructional deficiencies would not have had a substantial and injurious effect or influence on the jury's verdict.

A certificate of appealability will not issue. See 28 U.S.C. § 2253(c).  This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.  The clerk shall close the file.

IT IS SO ORDERED.

DATED: May 23, 2011

Marilyn Hall Patel
United States District Judge